UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRET PASCHE, on his own
behalf and on behalf of those
similarly situated,

      Plaintiffs,

vs.

TOTAL QUALITY LOGISTICS, LLC,

      Defendant.
_____/

Case No.:

**COMPLAINT & DEMAND FOR JURY TRIAL**
**(Collective Action Complaint)**

Plaintiff, BRET PASCHE, on his own behalf and on behalf of all opt-in plaintiffs and all others similarly situated (collectively "Plaintiffs" or "Plaintiff and the Potential Plaintiffs"), were employees of Defendant, TOTAL QUALITY LOGISTICS, LLC, ("TQL" or "Defendant"), and brings this action for unpaid overtime compensation, liquidated damages, declaratory relief and other relief under the Fair Labor Standards Act, as amended, 29 U.S.C. § 216(b) (the "FLSA").

**INTRODUCTION**

1.    Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) and 29 U.S.C. § 207(a).

2. The Fair Labor Standards Act was passed in 1938. Its principal purpose was to protect all covered workers from substandard wages and oppressive working hours, labor conditions that are detrimental to the maintenance of minimum standards of living necessary for health, efficient, and the general well-being of workers. *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739, 101 S.Ct. 1437, 1444 (1981).

3. Section 7(a) of the FLSA requires payment of time-and-one-half an employee's regular hourly rate whenever a covered employee works in excess of forty (40) hours per work week. 29 U.S.C. § 207(a).

4. The liquidated damages provision of the FLSA constitutes a congressional recognition that failure to pay the statutory minimum on time may be so detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and the general well-being of workers and to the free flow of commerce, that double payment must be made in the event of a delay in order to insure restoration of the worker to that minimum standard. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707-08, 65 S.Ct. 895, 902 (1945).

5. To the extent any partial payments have been made by Defendant to Plaintiffs of the disputed amounts at the time of the filing of this complaint, this action seeks to recover judgment in favor of Plaintiffs and against Defendant as

well as all remaining damages, including but not limited to liquidated damages and reasonable attorneys' fees and costs. *See id.*

6. The Defendant in this case, a Fortune 500 freight brokerage firm, is no stranger to the FLSA and its requirements, as evidenced by the trail of lawsuits and/or arbitrations that have followed TQL for more than a decade. *See Hendricks v. Total Quality Logistics, LLC*, Case No. 1:10-cv-649 (S.D. Ohio); *Hudgins v. Total Hudgins Quality Logistics*, Case No. 1:16-cv-7331 (N.D. Ill.); *Daza v. Total Quality Logistics, LLC*, Case No. 8:13-cv-3259 (M.D. Fla.); *Craig v. Total Quality Logistics, LLC* and *Kenneth Oaks*, Case No. 8:16-cv-2970 (M.D. Fla.); and *Hudgins*, at D.E. 70, Order Compelling Arbitration (order compelling 9 individuals to arbitration).

7. Plaintiff's counsel is aware that TQL has been subject to such lawsuits/arbitrations involving the *exact same issue* as here; four of which have been filed in federal district court and numerous of which have been filed in arbitration.

8. Additionally, the Department of Labor ("DOL") investigated TQL with respect to the *exact same issue* being alleged here and found that TQL violated the FLSA. *See* Excerpt of Full DOL Investigation File, attached as **Exhibit 1**.

9. Like the many other plaintiffs before him, Plaintiff here files this lawsuit based on TQL's failure to pay Plaintiff and the Potential Plaintiffs (other similarly-situated Logistic Account Executive Trainees ("LAET") and Logistic Account Executives ("LAE")) time and one half for all of their hours worked over forty (40) each week, in violation of the FLSA.

10. This action is intended to include each and every LAET and LAE who worked for Defendant at any location at any time within the past three (3) years.

11. Given TQL's flagrant refusal to comply with the FLSA, it is no surprise that TQL now demands its employees submit to "confidential" arbitration proceedings, effectively imposing a gag order on its employees so it can continue violating the FLSA in secret. Moreover, by demanding that arbitration proceedings be maintained confidential, TQL benefits from a "repeat player" effect in which TQL accumulates a wealth of knowledge on how to best posture its defense while its employees are prevented from obtaining the information needed to build a case of intentional misconduct against TQL.

12. TQL must not be permitted to enforce its arbitration agreement here and must be required to defend itself against Plaintiff's FLSA claim in this public forum which is what the FLSA demands.

## PARTIES

13. Plaintiff and the Potential Plaintiffs earned a salary in exchange for work performed for Defendant in the LAET position.

14. Plaintiff and the Potential Plaintiffs earned a salary, plus the ability to earn commissions in exchange for work performed for Defendant in the LAE position.

15. Plaintiff, Bret Pasche, was employed by Defendant as an LAET and subsequently as an LAE from on or about January 2019 to November 2020 in Defendant's Tampa, Florida office located at 601 S. Harbour Island Blvd #230, Tampa, FL 33602.

16. Defendant, TQL, is an Ohio Profit Corporation with numerous offices located throughout the United States.

17. TQL does not engage in transportation of goods, but instead provides truckload brokerage services to its customers in need of over the road transportation of their merchandise.

18. TQL "connects customers with shipping needs with carriers that have the available capacity and service offerings."  *See* Defendant's website, *available at* https://www.tql.com/about-us/company-overview (last visited July 11, 2023).

## **JURISDICTION AND VENUE**

19. This Court has original jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 as they arise under the FLSA, 29 U.S.C. § 201, *et seq.*

20. Defendant, TQL, conducts business in, among others, Hillsborough County, Florida, therefore venue is proper in the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. § 1391(b)(1) & (c).

21. Defendant, TQL, is subject to general jurisdiction in Florida because it is registered to do business here. *See Mallory v. Norfolk S. Ry. Co.*, No. 21-1168, 2023 WL 4187749 (U.S. June 27, 2023).

## **COVERAGE**

22. At all material times during the last three years, Defendant was an enterprise covered by the FLSA, and as defined by 29 U.S.C. § 203(r) and 203(s).

23. At all material times during the last three years, Defendant was an employer as defined by 29 U.S.C. § 203(d).

24. At all material times during the last three years, Defendant has had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

25. At all material times during the last three years, Defendant has been an enterprise engaged in commerce or in the production of goods for commerce

within the meaning of Section 203(s)(1) of the FLSA, in that the company had two or more employees:

    a. Engaged in commerce; or

    b. Engaged in the production of goods for commerce; or

    c. Handling, selling or working on goods or materials that have been moved in or produced for commerce. (i.e. computers, telephones, office furniture and/or office supplies).

## FACTUAL ALLEGATIONS

26. Defendant, TQL, is a company classified as a freight brokerage firm.

27. Defendant, TQL, has a common pay policy and/or pay practice which fails to pay certain non-exempt employees at a rate of time and one-half their regular rate of pay for hours worked in excess of forty (40) per week.

28. Plaintiff was initially employed by TQL in Florida in a training position titled "LAET" for a period of approximately six (6) months earning an annual salary of $35,568.00. Upon completion of the "training" period, Plaintiff transitioned to the positon titled "LAE" at which time he performed duties as an inside sales representative earning an annual salary of $35,568.00, plus the ability to earn commissions. In October 2021, TQL increased the LAE base salary to $40,000.00, plus the ability to earn commissions.

29. The LAET role is an entry level position.

30. As LAETs, Plaintiff and the Potential Plaintiffs, were subject to an extensive training program of approximately six (6) months in which LAETs are primarily responsible for learning the industry, TQL business practices, TQL's proprietary Load Management Software, and developing their preferred account management style.

31. LAET training includes classroom, online, E-Learning and on-the-job training.

32. As an LAET, Plaintiff and the Potential Plaintiffs' primary duty was to train and learn the LAE position and TQL's systems/procedures.

33. As an LAET, Plaintiff and the Potential Plaintiffs do not make any decisions on matters of significance.

34. As an LAE, Plaintiff and the Potential Plaintiffs, were expected to generate customers and revenue on behalf of Defendant by cold calling potential customers throughout the United States.

35. The LAEs' primary job duty is that of a "sales" employee who sells and performs the logistics service which is TQL's business.

36. TQL contains numerous other departments which support LAETs/LAEs in their core function of selling and providing TQL's service to its customers.

37. The LAETs and LAEs job involves nothing more than applying well-established techniques, procedures, and industry standards described in TQL's voluminous manuals, documents, and TQL's intranet system.

38. LAETs and LAEs are trained on these policies, procedures, standards and software resources which they are required to follow.

39. TQL improperly misclassified Plaintiff and the Potential Plaintiffs as exempt from overtime.

40. TQL failed to record all of the hours worked by Plaintiff and the Potential Plaintiffs.

41. Plaintiff and the Potential Plaintiffs routinely worked in excess of forty (40) hours per week as part of their regular job duties.

42. In fact, the "office hours" or minimum "schedule" required to be worked by the LAETs and LAEs resulted in a total of more than forty (40) hours per workweek.

43. Plaintiff and other LAETs similarly situated were encouraged to work hours in addition to the "office hours" or "schedule" provided to them.

44. Plaintiff and other LAEs similarly situated were encouraged to work hours in addition to the "office hours" or "schedule" provided to them.

45. In addition to the "office hours" or "schedule" required to be worked by LAETs, Plaintiff and those similarly situated to them were expected

to be available 24 hours, 7 days per week in order to respond to TQL's customers.

46. In addition to the "office hours" or "schedule" required to be worked by LAEs, Plaintiff and those similarly situated to them were expected to be available 24 hours, 7 days per week in order to respond to TQL's customers.

47. TQL holds itself out to the public as being available to its customers 24/7/365.

48. Plaintiff and other LAETs similarly situated had access to TQL company emails after office hours.

49. Plaintiff and other LAEs similarly situated had access to TQL company software programs after office hours.

50. Despite working more than forty (40) hours per week, TQL failed to pay Plaintiff and the Potential Plaintiffs overtime compensation at a rate of time and a half of their regular rate of pay for hours worked over forty (40) in a workweek.

51. TQL had/has a company-wide policy of failing to pay its LAETs and LAEs proper overtime compensation for all of their overtime hours worked.

52. TQL knowingly, willfully, or with reckless disregard carried out its illegal pattern or practice of failing to pay proper overtime compensation with respect to Plaintiffs and those similarly situated to them.

53. TQL did not act in good faith or reliance upon any of the following in formulating its pay practices: (a) case law, (b) the FLSA, 29 U.S.C. § 201, *et seq.*, (c) Department of Labor Wage & Hour Opinion Letters or (d) the Code of Federal Regulations.

54. TQL was subject to a DOL investigation in 2018. *See* Ex. 1.

55. The DOL investigation involved LAETs and LAEs working in Defendant's Tampa, Florida office from January 6, 2016 to July 28, 2018, where Plaintiff worked.

56. The DOL investigator who handled the 2018 investigation determined that TQL misclassified its LAETs and LAEs as exempt from overtime.

57. The 2018 investigation resulted in the DOL finding that TQL misclassified its LAETs and LAEs as exempt from overtime.

58. Despite such DOL finding, TQL has continued to misclassify its LAETs and LAEs as exempt from overtime.

59. The DOL further found that such violations are a clear systemic practice that will be found at all locations, if investigated by TQL.

60. The DOL investigator stated they had no reason to believe LAETs and LAEs are not similarly situated at all TQL locations.

61. TQL has acted willfully in failing to pay Plaintiff and the Potential Plaintiffs in accordance with the law.

62. Upon information and belief, TQL requires its employees, including its LAEs and LAETs, to sign an arbitration agreement upon their employment with TQL.

63. TQL's arbitration agreement is unenforceable, among other reasons, because it contains a confidentiality provision which contravenes the legislative purpose of the FLSA. *See Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1242 (M.D. Fla. 2010); *Pariente v. CLC Resorts & Devs., Inc.*, 2014 WL 6389756, at *5 (M.D. Fla. Nov. 14, 2014); *Housen v. Econosweep & Maintenance Serv., Inc.*, 2013 WL 2455958, at *2 (M.D.Fla. June 6, 2013); *DeGraff v. SMA Behavioral Health Serv., Inc.*, 2013 WL 2177984, at *4 (M.D.Fla. March 5, 2013); *Hamilton v. Brinker Int'l Payroll* 2011 WL 6032945, at *1 (M.D.Fla. December 5, 2011).

## COUNT I - RECOVERY OF OVERTIME COMPENSATION

64. Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1-63 above.

65. Plaintiff and the Potential Plaintiffs are/were entitled to be paid time and one-half of their regular rate of pay for each hour worked in excess of forty (40) per workweek.

66. TQL misclassified Plaintiff and the Potential Plaintiffs nationwide as exempt from overtime compensation.

67. During their employment with TQL, Plaintiff and the Potential Plaintiffs regularly worked overtime hours but were not paid time and one-half compensation for same.

68. As a result of TQL's intentional, willful, and unlawful acts in refusing to pay Plaintiff and the Potential Plaintiffs time and one-half of their regular rate of pay for each hour worked in excess of forty (40) per workweek in one or more workweeks, Plaintiff and the Potential Plaintiffs have suffered damages, plus incurring reasonable attorneys' fees and costs.

69. As a result of TQL's willful violation of the FLSA, Plaintiff and the Potential Plaintiffs are entitled to liquidated damages.

70. Plaintiffs are entitled to recover their attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

WHEREFORE, Plaintiffs demand judgment against Defendant for:

a) Designation of this action as a collective action under the terms of 29 U.S.C. §216(b) to all similarly situated members of the FLSA Opt-in Class, apprising them of the pendency of this action and permitting them to assert their FLSA claims in this action through individual consent;

b) The payment of all overtime hours at time and one-half the regular rate of pay for the hours worked by him/them for which Defendant did not properly compensate him/them;

  c) Liquidated damages;

  d) Reasonable attorneys' fees and costs incurred in this action;

  e) Pre- and post-judgment interest as provided by law;

  f) Trial by jury on all issues so triable;

  g) Any and all further relief that this Court determines to be appropriate.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable as a matter of right by jury.

Dated: August 11, 2023.  Respectfully submitted by,

     */s/ Kimberly De Arcangelis*
     Kimberly De Arcangelis, Esquire
     Florida Bar No.: 025871
     C. Ryan Morgan, Esq.
     Florida Bar No.: 15528
     Jolie Pavlos, Esq.
     Florida Bar No.: 125571
     Morgan & Morgan, P.A.
     20 N. Orange Ave., 15th Floor
     Orlando, Florida 32801
     Telephone: (407) 420-1414
     Facsimile: (407) 245-3383
     Email: kimd@forthepeople.com
        rmorgan@forthepeople.com
        jpavlos@forthepeople.com
     *Attorneys for Plaintiff and the Potential Plaintiffs*