UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**BRET PASCHE,**

    **Plaintiff,**

v.                                    **Case No. 8:23-cv-1812-MSS-UAM**

**TOTAL QUALITY LOGISTICS, LLC,**

    **Defendant.**

_____/

## REPORT AND RECOMMENDATION

Defendant Total Quality Logistics, LLC (TQL) requests this court compel arbitration and stay the proceedings. (Docs. 16, 23). Plaintiff Bret Pasche, on behalf of himself and a putative nationwide class (collectively, the plaintiffs), oppose the renewed motion, and TQL replies to the plaintiffs' response. (Docs. 26, 30). Upon consideration of the papers, the undersigned **RECOMMENDS** TQL's motion and renewed motion to compel arbitration and stay proceedings (Docs. 16, 23) be **GRANTED**.

    **I.**     **Background**

The plaintiffs are former employees of TQL. (Doc. 21, p. 1). The plaintiffs allege TQL violated the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b), by failing to provide overtime wages. Each of the plaintiffs signed an arbitration agreement prior to beginning their employment. (Doc.

1

23-1). TQL and the plaintiffs agree the arbitration agreements signed individually by each class member are "materially and substantively identical to each other." (Doc. 23, p. 2; Doc. 26, p. 7).

## II.   Legal Standard

The Federal Arbitration Act ("FAA") instructs that written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "reflect[s] both a liberal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation and quotations omitted). "[C]ourts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *Id.* (citation omitted). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

In some cases, "parties agree not only to arbitrate the merits of any claims that arise from their contract, but also to arbitrate any threshold or gateway questions about the arbitrability of those claims, such as questions about the enforceability, scope, or applicability of the parties' agreement to

2

arbitrate their claims." *Attix v. Carrington Mortg. Servs.*, LLC, 35 F.4th 1284, 1295 (11th Cir. 2022) (citation and quotations omitted). "[O]rdinarily, the question of arbitrability is undeniably an issue for judicial determination." *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311 (11th Cir. 2014) (quotation omitted). However, the FAA "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019).

"Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (quotation omitted). If there is clear and unmistakable evidence that the parties agreed to delegate threshold arbitrability questions to the arbitrator, "a court may not decide the arbitrability issue." *Henry Schein*, 586 U.S. at 69.

### III. Analysis

TQL argues the arbitration agreements executed by each of the plaintiffs should be followed as they have been in other cases against TQL under identical arbitration agreements. (Doc. 23, pp. 3–17). The plaintiffs set forth four arguments — the validity of the arbitration agreements is a threshold issue for this court's determination, the plaintiffs are excluded from the FAA as transportation workers, the arbitration agreements are void on

3

public policy grounds, and the arbitration agreements do not cover claims for declaratory judgment. (Doc. 26, pp. 6–21).

The plaintiffs argue the arbitration agreements are "invalid" because the plaintiffs are exempt from the FAA and the confidentiality provisions void the arbitration agreements on public policy grounds. (Doc. 26, pp. 6–17). The plaintiffs further argue both of these points are threshold issues for the court to decide. (Doc. 26, p. 6). The plaintiffs heavily rely on *Henry Schein* for the proposition that "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." 586 U.S. at 65. The plaintiffs insist both the issues of whether they are excluded as transportation workers under the FAA and whether the confidentiality provision is against public policy are validity questions the court must answer. (Doc. 26, pp. 7–18).

It is first important to note the difference between the validity of a contract and the enforceability of a contract. The Eleventh Circuit explained:

> "[W]e note that there appears to be a subtle, but material, distinction between the two concepts. Validity, the Supreme Court has indicated, is about 'what it takes to enter into' a legally operative arbitration agreement. *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, —— U.S. ——, 137 S. Ct. 1421, 1428, 197 L.Ed.2d 806 (2017); *see also id.* (noting that 'duress' issues, which 'involve [ ] unfair dealing at the contract formation stage,' relate to an arbitration agreement's 'initial validity' (quotations omitted and alteration adopted)). And enforceability is about whether the law allows for the enforcement of a validly formed arbitration agreement. *See id.* (contrasting rules 'finding arbitration

> contracts invalid because improperly formed' and rules 'refusing to enforce those agreements once properly made')."

*Attix*, 35 F.4th at n. 9. The plaintiffs address enforceability arguments under the guise of validity and then quote cases, like *Henry Schein*, that mandate a threshold validity determination. But labeling an enforceability issue as a validity issue does not make it one, and the plaintiffs do not argue any facts that attack the validity of the arbitration agreements. Indeed, in *Henry Schein*, the Supreme Court stated, "if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." 586 U.S. at 69.

The plaintiffs also incorrectly apply *Lichtman v. Bar Educ., Inc.*, to argue voidability based on public policy grounds is a threshold determination for the court. No. 8:21-CV-1370-VMC-AEP, 2021 WL 4478249 (M.D. Fla. Sept. 30, 2021). The plaintiffs rely on *Lichtman*'s analysis of whether public policy arguments against enforcement of an entire arbitration agreement are threshold issues for the court. *Id.* at *3. Later in the order, the court applied *Henry Schein* to hold "[p]arties may delegate threshold arbitrability issues to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable evidence.'" *Id.* at *6. The plaintiffs are correct that *Henry Schein* and *Lichtman* stand by the principle that "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement

5

exists." *Henry Schein*, 139 S. Ct. at 69. The question in this case is not whether the arbitration agreements are valid. The plaintiffs make no argument that the formation of the arbitration agreements destroy their validity. (*See* Doc. 26). No matter their label in the response, each of the plaintiffs' four arguments attacks the enforceability of the arbitration agreements, not the agreements' validity. Therefore, the only question is whether the arbitration agreements delegate the enforceability issue to an arbitrator.

The arbitration agreements between the plaintiffs and TQL (*see* Doc. 23-1) are identical to the arbitration agreement executed by the plaintiff and TQL in *Craig v. Total Quality Logistics, LLC*, No. 8:16-CV-2970-T-24-AEP, 2017 WL 1533840 (M.D. Fla. Jan. 30, 2017). In pertinent part, the arbitration agreements' delegation provision specifies the arbitrator has "authority to resolve disputes about [. . .] how this Agreement was formed, applied, interpreted, or enforced." (Doc. 23-1, § 4). The arbitration agreements also incorporate by reference the Cincinnati Bar Association's rules for arbitration which state, "[t]he Arbitrator shall have the power to rule on his or her jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." Rule 18, CBADR Arbitration Rules (May 1, 2020). In *Craig*, the court employed the plain language rule of contract interpretation to find

"the plain language of the Arbitration Agreement makes it clear that the parties agreed to arbitrate the issue of arbitrability." 2017 WL 1533840 at *2. The court in *Licktman* found clear and unmistakable evidence the parties delegated arbitrability to an arbitrator through an agreement that did not have a specific delegation clause but incorporated by reference rules that did. 2021 WL 4478249 at *6. The plain language of the delegation clause (Doc. 23-1, § 4) and the incorporation by reference of the CBADR Arbitration Rules (Doc. 23-1, § 2(B)(i)) are more than enough to prove clear and unmistakeable intent to delegate issues of arbitrability to an arbitrator. *See In re Checking Acct. Overdraft Litig.*, 856 F. App'x 238, 245 (11th Cir. 2021) ("[T]hat incorporation, coupled with the delegation clause, proves to be more than enough.").

The plaintiffs argue *Craig* and other cases where the same arbitration agreement was enforced are immaterial to the present analysis because "those cases did not argue that the Arbitration Agreement was void on public policy grounds or the transportation worker exemption." (Doc. 26, p. 16). However, "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement [within the contract] to arbitrate" issues of arbitrability. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010). This is true even if the underlying contract is itself an arbitration agreement. *See id.* at 72. The

7

plaintiffs challenge the confidentiality clause and attempt to apply the transportation worker exemption to the arbitration agreements but give no specific challenges to the delegation provision. *See In re Checking*, 856 F. App'x at 245 ("Without Plaintiffs pointing to any specific deficiencies in the delegation clause, we find no reason to deem it unconscionable. Plaintiffs may take up their challenges to the contract as a whole with the arbitrator.").

As in *Craig*, because the plaintiffs failed to directly challenge the specific delegation provision, the plaintiffs' arguments must be decided by an arbitrator. *See In Re Checking Acct.*, 856 F. App'x at 245 ("[W]e only retain jurisdiction over challenges directed specifically at that delegation.") (citing *Rent-A-Center W.*, 561 U.S. at 63, 70–71).

### IV. Conclusion

It is **RECOMMENDED** that TQL's motion to compel arbitration and stay the case (Docs. 16, 23) be **GRANTED**. It is further **RECOMMENDED** that this case be **STAYED and ADMINISTRATIVELY CLOSED** pending arbitration. *See Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir, 1992) ("Upon finding that a claim is subject to an arbitration agreement, the court should order that the action be stayed pending arbitration.").

8

**ENTERED** in Tampa, Florida on April 24, 2024.

*Amanda Arnold Sansone*
AMANDA ARNOLD SANSONE
United States Magistrate Judge

## NOTICE TO PARTIES

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to request an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. A party's failure to object timely in accordance with 28 U.S.C. § 636(b)(1) waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions. 11th Cir. R. 3-1.