UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRET PASCHE, on his own behalf and
on behalf of those similarly situated,

    Plaintiffs,

v.                                            Case No: 8:23-cv-01812-MSS-JSS

TOTAL QUALITY LOGISTICS,
LLC,

    Defendant.

## ORDER

**THIS CAUSE** comes before the Court for consideration of Defendant's motion and renewed motion to compel arbitration and stay proceedings. (Dkts. 16, 23) On April 24, 2024, United States Magistrate Judge Amanda A. Sansone issued a Report and Recommendation, recommending that Defendant's motion and renewed motion to compel arbitration be granted and that the case be stayed and administratively closed pending arbitration. (Dkt. 36) Plaintiffs filed Objections, (Dkt. 39), and Defendant filed its response thereto. (Dkt. 41) Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **SUSTAINS IN PART** Plaintiffs' Objections, (Dkt. 39), but nonetheless **ADOPTS** the Magistrate Judge's Report and Recommendation to compel arbitration. (Dkt. 36) Specifically, the Court adopts Judge Sansone's conclusion that Defendant's motion and renewed motion to

compel arbitration should be granted and that the case should be stayed and administratively closed pending arbitration. However, the Court finds that it must first determine whether the transportation worker exemption under § 1 of the Federal Arbitration Act ("FAA") applies before compelling arbitration. The Court finds Plaintiffs do not fall within the exemption.

I.    BACKGROUND

On April 24, 2024, Judge Sansone entered a Report and Recommendation, (Dkt. 36), recommending Defendant's motion and renewed motion to compel arbitration and stay proceedings be granted. (Dkts. 16, 23) Judge Sansone found that Plaintiffs' arguments concern the enforceability of the arbitration agreements and not the agreements' validity.[1] (Dkt. 36 at 6) For this reason, Judge Sansone determined that the only remaining issue for the Court to determine is whether the arbitration agreements delegate these enforceability issues to an arbitrator. (Id.) Here, Judge Sansone found that, because Plaintiffs challenge the confidentiality clause and attempt to apply the transportation worker exemption to the arbitration agreements but make no specific challenges to the delegation provision, Plaintiffs' arguments must be decided by an arbitrator. (Id. at 8)

Plaintiffs object to Judge Sansone's Report and Recommendation on two grounds. First, Plaintiffs reiterate that the applicability of the transportation worker

---

[1] Each of the plaintiffs signed an arbitration agreement prior to beginning their employment at Total Quality Logistics, LLC. (Dkt. 23-1) The Parties agree that the arbitration agreements signed individually by each class member are "materially and substantively identical to each other." (Dkt. 23 at 2; Dkt. 26 at 7)

exemption under § 1 of the FAA constitutes a threshold issue for the Court's determination. (Dkt. 39 at 3—5) In support, Plaintiffs assert that the Magistrate Judge overlooked the Supreme Court's decision in New Prime, Inc. v. Oliveira, 586 U.S. 105 (2019), which they contend is directly on point. (Id. at 3—4) Second, Plaintiffs argue that the validity of the confidentiality provision in the arbitration agreements, which they challenge as void against public policy, also raises a threshold issue for the Court's determination. (Id. at 5-7) In this regard, Plaintiffs argue that the Magistrate Judge overlooked a key holding in Lichtman v. Bar Educ., Inc., 2021 U.S. Dist. LEXIS 187429, at *8 (M.D. Fla. Sept. 30, 2021) (finding that a "void-as-against-public-policy argument implicates the arbitration agreement's validity, a threshold issue for the court to determine."). (Dkt. 39 at 5—6) Plaintiffs contend that, at a minimum, the Court should strike the confidentiality provision as contrary to public policy before compelling arbitration. (Id. at 7)

Defendant filed a response to Plaintiffs' objections. (Dkt. 41) Defendant argues that Plaintiffs continue to confuse the issue of the arbitration agreements' validity with their enforceability. (Id. at 1—3) Defendant contends that the express language of the arbitration provision delegates any dispute about the arbitrability of an issue under the provision to an arbitrator. (Id. at 3—5) Therefore, Defendant maintains that it is the arbitrator's role to determine whether Plaintiffs' claims are subject to arbitration. (Id. at 4—5) In the alternative, should the Court find the validity of the arbitration agreements to be at issue, Defendant asserts that the outcome would remain the same for the following reasons. (Id. at 2) First, Defendant argues that Plaintiffs do not

3

qualify as "transportation workers" exempt from the FAA under § 1. (Id. at 5—6) Second, Defendant contends that the inclusion of a confidentiality provision does not constitute a basis to void the arbitration agreements. (Id. at 6—7)

## II.    STANDARD OF REVIEW

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify the Magistrate Judge's report and recommendation. 28 U.S.C. § 636(b)(1); Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982), cert. denied, 459 U.S. 1112 (1983). A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party." Jeffrey S. v. State Bd. of Educ., 896 F.2d 507, 512 (11th Cir. 1990) (quoting H.R. 1609, 94th Cong. § 2 (1976)). In the absence of specific objections, there is no requirement that a district judge review factual findings *de novo* and the court may accept, reject, or modify, in whole or in part, the findings and recommendations. 28 U.S.C. § 636(b)(1)(C); see Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993). The district judge reviews legal conclusions *de novo,* even in the absence of an objection. See Cooper-Houston v. Southern Ry., 37 F.3d 603, 604 (11th Cir. 1994).

4

### III. DISCUSSION

Upon consideration of the Report and Recommendation, in conjunction with an independent examination of the file, the Court finds that, pursuant to applicable case law, it must first determine whether the § 1 exemption for transportation workers applies before compelling arbitration. In New Prime, the Supreme Court held that even when an arbitration agreement delegates issues of arbitrability to an arbitrator, a court must first determine whether the arbitration agreement falls within the scope of the FAA as outlined in §§ 1 and 2. Id. at 112 ("[A] court may use §§3 and 4 to enforce a delegation clause only if the clause appears in a 'written provision in . . . a contract evidencing a transaction involving commerce' consistent with §2. And only if the contract in which the clause appears doesn't trigger § 1's . . . exception."). Accordingly, the Court **OVERRULES** the Report and Recommendation to the extent it finds that the Court can compel arbitration without first addressing whether § 1 applies.

In Southwest Airlines Co. v. Saxon, 596 U.S. 450 (2022), the Supreme Court found that the transportation worker exemption applies to a "class of workers" that is "actively 'engaged in transportation' of . . . goods across borders via the channels of foreign or interstate commerce." Id. at 456, 458. The court held that a ramp supervisor who frequently loaded and unloaded cargo on airplanes travelling in interstate commerce fell within the transportation worker exemption, even though the supervisor did not physically cross state lines. Saxon, 596 U.S. at 450. The court explained that the term "'workers' directs the interpreter's attention to the 'performance of work'" and "the word 'engaged' . . . similarly emphasizes the actual work that the members

5

of the class, as a whole, typically carry out." Id. at 456. See New Prime, 586 U.S. at 116 (emphasizing that the language of § 1 refers to "any . . . class of workers engaged in foreign or interstate commerce.").

In Hamrick v. Partsfleet, LLC, 1 F.4th 1337 (11th Cir. 2021), the Eleventh Circuit held that "[t]he transportation worker exemption applies if the employee is part of a class of workers: (1) employed in the transportation industry; and (2) that, in the main, actually engages in foreign or interstate commerce." Id. at 1349 (remanding the case to the district court to determine whether "final-mile delivery drivers" – making local deliveries of goods that had travelled interstate – were a class of workers employed in the transportation and whether the class, in general, actually engaged in foreign or interstate commerce). Id. at 1351. The Eleventh Circuit's test focuses on the nature of the work performed rather than the movement of the goods themselves. See Carrion v. Mia. Lakes AM., LLC, 2023 U.S. Dist. LEXIS 198443, at *6—7 (S.D. Fla. Nov. 2, 2023) (finding that salespersons engaged in moving goods that at some point pass through interstate commerce did not establish that the salespersons themselves engaged in interstate commerce); See Nunes v. Lasership, Inc., 2023 U.S. Dist. LEXIS 174412, at *7—8 (N.D. Ga. Sep. 28, 2023) (finding that workers employed in the transportation industry who sorted and loaded packages for local delivery were far too removed from interstate commerce to fall within § 1's exemption).

Plaintiffs argue that Logistics Account Executive Trainees ("LAETs") and Logistics Accountant Executives ("LAEs") at Total Quality Logistics, LLC, provide truckload brokerage services to facilitate the transportation of goods across state lines

in interstate commerce and are, therefore, exempt from arbitration under § 1. (Dkt. 26 at 2—4) In support, Plaintiffs submit the declaration of Bret Pasche, which details the job responsibilities of LAETs and LAEs. (Dkt. 26-1) Pasche explains, for example, that LAEs and LAETs "gather information from the customer regarding the load . . . input the data gathered from the customer into [a] database, which populates a list of carriers pre-approved by TQL." (Dkt. 26-1 at ¶¶ 14—15) The LAEs and LAETs then "make calls" to locate carriers and "negotiate with potential carriers to garner a price that will earn TQL 'brokerage revenue.'" (Dkt. 26-1 at ¶ 15) Once a carrier is secured, the LAEs and LAETs "oversee[] the transportation of the load which includes making 'check calls' . . . to confirm the on-time delivery." (Dkt. 26-1 at ¶¶ 16, 18)

      The Court finds on these facts that Plaintiffs do not fall within the transportation worker exemption under § 1, as defined in both Saxon and Hamrick. In Saxon, the Supreme Court held that the transportation worker exemption applies to a "class of workers engaged in foreign or interstate commerce." Id. at 455. This standard requires workers to be sufficiently adjacent to the actual channels of commerce. Plaintiffs, as described in Pasche's declaration, perform logistical and administrative tasks such as gathering load information, inputting data into a database, coordinating with carriers, negotiating pricing, and overseeing the transportation process through "check calls." (Dkt. 26-1 at ¶¶ 14—15, 16, 18) While these functions support the transportation process, they are too attenuated to support the conclusion that the LAEs and LAETs are "actively 'engaged in transportation' of . . . goods across borders via the channels of foreign or interstate commerce." Saxon, 596 U.S. at 458.

Plaintiffs have not cited to any case law that specifically supports their contention that workers providing logistical support in the movement of goods that flow through interstate commerce fall within the transportation worker exemption. Likewise, the Court's independent review has uncovered no authority to support this proposition. Accordingly, the Court finds that Plaintiffs do not fall within the transportation worker exemption.

The Court also **REJECTS** Plaintiffs' contentions that the confidentiality provision invalidates the arbitration agreements and that this issue is for the Court to decide. Plaintiffs' reliance on Lichtman is misplaced. Unlike the arbitration agreement at issue in this case, the arbitration agreement in Lichtman did not contain a specific delegation provision. Id. at 5. Moreover, the court applied Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524 (2019), and found that "[p]arties may delegate threshold arbitrability issues to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable evidence.'" Lichtman, 2021 U.S. Dist. LEXIS 187429, at *15.

The Eleventh Circuit has reaffirmed that a party must directly challenge the delegation provision to contest its enforceability. Attix v. Carrington Mort. Servs., LLC, 35 F.4th 1284, 1302 (11th Cir. 2022) (citing Parnell v. CashCall, Inc., 804 F.3d 1142, 1146-47 (11th Cir. 2015)) ("[A]bsent a challenge to the delegation provision itself, the federal courts must treat the delegation provision as valid . . . and must enforce it . . ., leaving any challenge to the validity of the [a]greement as a whole for the arbitrator.") (quotation omitted). The court further explained that a delegation

8

provision is severable from the underlying arbitration agreement and must be challenged separately. Attix, 35 F.4th at 1303. See New Prime, at 586 U.S. at 112 (stating that, "under the severability principle, we treat a challenge to the validity of . . . a delegation clause . . . separately from a challenge to the validity of the entire contract in which it appears."). Furthermore, the court in Attix addressed different types of arbitrability issues, including those concerning validity and enforceability. Id. at 1299. The court clarified that "validity" concerns whether the parties "entered into a legally operative arbitration agreement," while "enforceability" pertains to whether the agreement is "enforceable under law." Id. (citing Kindred Nursing Ctrs. Ltd. P'ship v. Clark, 581 U.S. 246, (2017)).

The delegation provision in the arbitration agreements clearly states that "[t]he arbitrator shall have authority to resolve disputes about discovery and how this Agreement was formed, applied, interpreted, or enforced." (Dkt. 23-1 at ¶ 4) This language unmistakably delegates all disputes concerning arbitrability, including those related to the confidentiality provision, to the arbitrator. As Plaintiffs have not challenged the delegation provision itself, the Court finds that issues of arbitrability, including those concerning the confidentiality clause, must be resolved by an arbitrator. Accordingly, the Court **SUSTAINS** the Report and Recommendation to the extent it finds that Plaintiffs' challenge to the confidentiality provision does not serve as a basis to deny Defendant's motion to compel arbitration.

Accordingly, it is **ORDERED** that:

1. The Report and Recommendation, (Dkt. 36), is **AFFIRMED** and **ADOPTED IN PART**, for the reasons set forth in this Order.

2. Defendant's motion and renewed motion to compel arbitration and stay proceedings, (Dkts. 16, 23), are **GRANTED**. Plaintiffs will advance their claims asserted in this lawsuit via binding arbitration as provided for in the arbitration agreements.

3. Plaintiffs' Objections to the Report and Recommendation on Defendant's Renewed Motion to Stay and Compel Arbitration, (Dkt. 39), are **OVERRULED IN PART AND SUSTAINED IN PART**.

4. The proceeding is **STAYED** pending arbitration as to the claims between Plaintiffs and Defendant.

5. The **CLERK** is directed to **TERMINATE** all motions pending before the Court and **ADMINISTRATIVELY CLOSE** this case.

6. The Parties shall have **fourteen (14) days** after the completion of arbitration to file a notice or appropriate motion advising the Court how and whether this case should proceed.

**DONE** and **ORDERED** in Tampa, Florida, this 19th day of September 2024.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any Unrepresented Person